FILED
2017 Jul-26 AM 08:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **EDNA JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number **2:16-cv-01297-AKK** |
| | ) | |
| **HAYNES & HAYNES, P.C., *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Edna Jackson filed this lawsuit against her former employers, Haynes & Haynes, P.C., Alicia Haynes, and Kenneth Haynes, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, and Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* Doc. 1. This court previously dismissed the FCRA claims (Counts III and IV). *See* doc. 18. Presently before the court are defendants' motion for sanctions for spoliation of evidence, doc. 35, and motions for summary judgment, docs. 43 & 48. The motions are fully briefed, docs. 35; 38; 39; 40; 47; 48; 55; 56; 57; and 59, and ripe for review.[1] For the reasons stated below, the motion for sanctions, doc. 35, is due to be denied, and the motions for summary judgment, docs. 43 & 48, are due to be granted.

[1] Jackson's motion to strike defendants' reply in support of their motion for sanctions, doc. 40, is **DENIED**.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 244 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual dispute will be resolved in the non-moving party's favor when sufficient competent

evidence supports that party's version of the disputed facts. *But see Pace v. Capobianco*, 238 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL BACKGROUND

Jackson worked as a paralegal for Haynes & Haynes, P.C., a law firm owned and managed by Alicia Haynes and Kenneth Haynes, for approximately three weeks in August 2014. Doc. 54-1 at 2. Jackson's first paycheck included overtime pay "for at least some of the hours [Jackson] had worked over 40 during the work week or weeks covered by that first pay-check." Doc. 1 at 5. Allegedly, after Alicia Haynes learned about the overtime payment, she "had a conversation with [Jackson]," and purportedly informed Jackson that Haynes & Haynes did not pay overtime and that Jackson should record her daily "stop time" as 5:00 p.m.

regardless of when Jackson actually stopped working. Doc. 1 at 5. Thereafter, after noticing that Kenneth Haynes was "alter[ing] the hours of work [Jackson] recorded for Defendants and reduc[ing] them," *id.* at 6, Jackson complained to Kenneth Haynes about the failure to pay her overtime. Still, Kenneth Haynes continued to alter the hours Jackson recorded on the firm's TrackSmart database. *Id.* at 7. On August 29, 2014, after two complaints by Jackson about the purported FLSA violations, Kenneth Haynes discharged Jackson. Doc. 54-1 at 5–6.

## III. ANALYSIS

The court begins its analysis with the motion for sanctions for spoliation of evidence, followed by the summary judgment motions.

### A. Spoliation

The subject of defendants' spoliation motion is electronically stored information ("ESI") Jackson purportedly maintained, reflecting her arrival and departure times from work.[2] According to Jackson, discrepancies between her pay stubs and these records demonstrate defendants' failure to compensate her for all her overtime hours. *See* doc. 56 at 6.

[2] The motion also addresses a recording Jackson purportedly made of her termination meeting with Kenneth Haynes. *See* doc. 35 at 16. Jackson alleges that she transferred the recording to her daughter's MacBook computer, but that the recording is no longer on the MacBook. *See* doc. 35-2 at 11. The court will not focus on this aspect of defendants' spoliation motion, because, as explained in Parts III.B.1.c and III.B.2.c, *infra*, defendants' motions for summary judgment as to the retaliation claim are due to be granted.

To keep track of her work hours, Jackson used an "HoursTracker" application on her cell phone. *See* doc. 54-1 at 3. However, because Jackson used a free version of the application, she could not export the data electronically. Therefore, Jackson manually transposed the information into Excel and Microsoft Word spreadsheets on her daughter's MacBook. *See* doc. 35-2 at 8. Jackson no longer has the cell phone, which she returned to Verizon after filing a complaint with the Department of Labor about the overtime pay and retaining counsel for this litigation. Also, Jackson's daughter allegedly denied Jackson access to the MacBook for a period of time, during which the information Jackson inputted into Excel and Microsoft Word somehow disappeared. After Jackson regained access to the MacBook, she took it to the Apple Genius Bar, where store personnel were unable to recover the data. *See* doc. 38-6 at 3. However, sometime before her daughter denied her access to the MacBook, Jackson apparently printed copies of the data and is seeking to use her printouts to prove her claims in this lawsuit. This failure to preserve the original data is the basis for the motion for sanctions.

Spoliation is the "failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Oil Equip. Co. v. Modern Welding Co.*, 661 F. App'x 646, 652 (11th Cir. 2016) (internal quotation marks omitted). Federal Rule of Civil Procedure 37(e), which governs a party's failure to preserve electronic evidence, states that:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from the loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Although Jackson concedes that she had a duty to preserve the ESI, she contends that she took "reasonable" steps to preserve it and that defendants have not proven that the ESI cannot be restored or replaced through additional discovery. *See* doc. 38 at 5–6. The court is confounded by Jackson's latter point and the related contention that defendants failed to subpoena the MacBook,[3] in light of Jackson's testimony that her daughter refuses to turn over the MacBook for a forensic inspection despite this court's order. *See* docs. 33 at 6–8; 33-2 at 3 ("I

[3] *See* doc. 38 at 11 (Jackson's contention that defendants "chose not to subpoena the Macbook from [Jackson's] daughter to see if the computer expert (of their own choice) could recover . . . the information.").

told my daughter I have been ordered [by the court] to give her MacBook to a forensic expert, and my daughter will not agree for me to do so."). In any event, Jackson ultimately has the burden to prove her claims. As such, to the extent that source records exist to support her claims, she cannot hide behind her daughter's ownership of the MacBook while also insisting that defendants prove that the data is no longer recoverable. Given that Jackson seeks to use printouts of the data to prove her claims in this lawsuit, if anyone had a duty to retrieve the computer — including by a subpoena, if necessary — to establish that other means to recover this evidence may exist, it is Jackson.

The court is also not persuaded by Jackson's contention that she took reasonable steps to preserve the ESI. Accusing an employer of violating any law is a serious allegation. To the extent evidence exists to support this contention, the employee must take reasonable and prudent steps to preserve it — a fact Jackson acknowledges. *See* doc. 38 at 5. Here, Jackson admits that she relinquished the phone — the source of the raw data — after retaining counsel to litigate this case. Doc. 35-2 at 9. Although Jackson claims she returned the phone to Verizon because she "had already downloaded or wr[itten] down the information,"[4] Jackson concedes that this "assumes that [she] honestly wrote down the

[4] Jackson also states that, before returning the phone to Verizon, she "backed up [the information on it] to iTunes" on the MacBook and advised her daughter not to delete any data off of the MacBook. Doc. 35-2 at 5.

information" and that "the best evidence of the records [Jackson] kept at the time" was the original data on the phone. *Id.* At a minimum, Jackson also should have upgraded to the paid version of the HoursTracker application to export the data before returning the phone to Verizon, or taken reasonable steps to preserve the Excel or Word spreadsheets on the MacBook by, for example, emailing them to herself or her counsel. Based on this record, defendants have established that Jackson failed to take reasonable steps to preserve the ESI and that they are prejudiced "from the loss of the information . . . ." Fed. R. Civ. P. 37(e).

As a sanction, defendants ask the court to impose a default judgment or to issue an "adverse inference instruction" regarding the ESI. Doc. 35 at 15. However, Rule 37(e) limits these severe sanctions to situations where a party "acted with the intent to deprive another party of the information's use in the litigation." Being "negligent and irresponsible in maintaining the information" and "know[ing] of her obligation to preserve the integrity of the information," *see* doc. 35 at 14–15, are not sufficient to show an intent to deprive defendants of the information to warrant the severe sanctions defendants seek. Accordingly, the motion for sanctions is due to be denied. Instead, consistent with the directive that it "order measures no greater than necessary to cure the prejudice," Fed. R. Civ. P. 37(e), and the Federal Rules of Evidence, the court will analyze the printouts under standard evidentiary rules in evaluating the motions for summary judgment.

**B. Summary Judgment**

The court has for consideration two separate motions for summary judgment: one by Kenneth Haynes and Haynes & Haynes P.C., doc. 43, and the other by Alicia Haynes, doc. 48. The court examines the motions separately below.

1. Kenneth Haynes and Haynes & Haynes, P.C.

Kenneth Haynes and Haynes & Haynes raise various grounds in support of their motion: (1) that they properly classified Jackson as "nonexempt" and paid her all the overtime due; (2) that no private right of action exists for a recordkeeping violation under the FLSA; and (3) that Jackson cannot prove pretext on her retaliation claim.

*a. FLSA Overtime Violation (Count I)*

Jackson alleges that defendants improperly classified her as an "exempt" employee and failed to pay her for all the overtime hours she worked. Although the parties bicker over whether defendants actually classified Jackson as "exempt," the parties' disagreement centers primarily on the number of overtime hours Jackson worked. Indeed, Jackson concedes that defendants paid her at least some overtime compensation, and is primarily challenging the failure to pay her for all of the overtime she claims she worked. Relevant here, defendants' records show that Jackson worked 162.71 hours, including 5.83 overtime hours, *see* doc. 44-1 at

13–14, and Jackson claims that she worked 182.75 hours, including 22.75 overtime hours, *see* doc. 45-7 at 11. To support her position, Jackson relies on the printout of the summaries she independently created of the HoursTracker data and for which, to date, she has not successfully recovered the metadata from the MacBook. *See* doc. 44-2 at 2, 10–11. Jackson maintains that she "created" these summaries from "information generated by and electronically stored on her phone." Doc. 47 at 22. Although the Federal Rules of Evidence allow a party to produce large volumes of data in the form of a summary in certain circumstances, "[t]he proponent must make the originals or duplicates available for examination . . . ." *See* Fed. R. Evid. 1006. As defendants note, however, the data upon which the summaries are based is "no longer available to [Jackson] and has not been produced to Defendants." Doc. 47 at 22. Absent the original ESI or duplicates thereof, Jackson cannot rely upon these summaries to rebut defendants' contention that they fully compensated Jackson for her regular and overtime hours. *See U.S. v. Arias-Izquierdo*, 449 F.3d 1168, 1184 (11th Cir. 2006) ("[O]ther parties to the case must be provided the original records upon which the summary is based — or duplicates of those originals — prior to the admission of the summary.").[5]

[5] Jackson's contention that the court may admit her summaries as a "personal business record," *see* doc. 56 at 7 n.3 (stating that her charts are "not inadmissible hearsay because [they are] [Jackson's] personal business record she made and maintained during her employment"), is unpersuasive. Rule 803(6) requires, among other things, that the "opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Here, Jackson has conceded that her summaries contain inaccuracies. For

Therefore, because these summaries are inadmissible without the source data being available to defendants, and in light of Jackson's failure to take reasonable efforts to preserve the original data, *see* Part III.A, *supra*, Jackson may not rely upon these summaries to create a genuine factual dispute. Accordingly, in the absence of admissible evidence to rebut defendants' records of her overtime hours, Kenneth Haynes's and Haynes & Haynes's motion as to the failure to pay overtime claim (Count I) is due to be granted.

*b. FLSA Recordkeeping Violation (Count II)*

Next, Jackson seeks equitable relief due to defendants purportedly "misclassif[ying] [her] as 'exempt' and fail[ing] to keep accurate records of the hours [she] worked in violation of the FLSA . . . ." Doc. 1 at 15. As defendants correctly point out, no private right of action exists for such a claim. *See Powell v. Florida*, 132 F.3d 677, 678 (11th Cir. 1998) ("[W]e follow the decisions of the other circuits which have held that the plain language of the [FLSA] provides that the Secretary of Labor has the exclusive right to bring an action for injunctive relief."). Although Jackson acknowledges that "prior FLSA case law is against [her] on this issue," doc. 56 at 19, she asks the court to consider other potential vehicles for relief, including the All Writs Act, 28 U.S.C. § 1651(a), Section 2 of

example, Jackson's document shows that she worked a full day on August 27, 2014, even though, when confronted during her deposition with a doctor's note she submitted, she admitted that she, in fact, spent part of that work day at the optometrist. *See* doc. 54-2 at 22.

Article III of the United States Constitution, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *id.* at 20. The court declines to do so in light of *Powell*, and finds that the motion as to Count II is also due to be granted.

*c. Retaliation (Count III)*

Lastly, Jackson alleges that defendants discharged her in retaliation for her complaints. Doc. 1 at 20. Where, as here, Jackson has presented no direct evidence of retaliation, the court "must employ the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), to analyze [her] retaliation claim." *Jones v. Gulf Coast Health Care of Del., L.L.C.*, 854 F.3d 1261, 1271 (11th Cir. 2017). "Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case by demonstrating (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). If Jackson can establish a *prima facie* case, then the burden shifts back to defendants to articulate a legitimate, nonretaliatory reason for Jackson's discharge. Finally, if defendants meet this burden, then Jackson must show that the proffered reason(s) were pretext designed to mask retaliation.

Jackson's claim fails because she cannot show that defendants' alleged desire to retaliate was the but-for cause of her discharge. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."). In fact, Jackson testified to a number of reasons for her discharge that had no connection to her purported protected activity.[6] Therefore, Jackson cannot make a *prima facie* case, and her retaliation claim fails.

Alternatively, even if Jackson can establish a *prima facie* case, her claim fails because she cannot rebut each of the legitimate, nonretaliatory reasons for her discharge. Among other reasons, Kenneth Haynes asserts that he came to distrust Jackson after speaking with her former employer (at Jackson's request)[7] and learning that Jackson had purportedly written nine checks to herself from that employer's business account and sent text messages to a former coworker named

[6] *See* doc. 49-3 at 4 (Q: ". . . What is your opinion as to why you were terminated?"; A: "Because of things that happened with Tammy Edwards. And for some reason they thought that I was some hired implant to spy on another case, to be completely honest with you."; Q: "Any other reason you think you were fired?"; A: "Because of Hormone Health & Weight Loss." . . . Q: "Any other reason?"; A: "Mr. Haynes listened to the untrue statements that Hormone Health & Weight Loss told him without giving me the opportunity to explain what happened."). *See also id.* at 8 (Q: "Do you think if Hormone Health had not made any communications to Mr. Haynes, you would not have been fired?"; A: "Yes, ma'am, I do. I do not believe – I mean, I believe that I was fired directly – one of the reasons was directly because of what was said by Frank Paris and/or Scott or the attorney to Mr. Haynes. . . . .").

[7] Jackson sought Kenneth Haynes's assistance with a legal matter concerning her former employer, who, Jackson claimed, withdrew funds from Jackson's personal checking account. *See* doc. 45-6 at 30. The former employer informed Mr. Haynes that Jackson had written nine checks from their business account without authorization. *See* doc. 45-2 at 4.

"Katie" stating that she missed work with the former employer because of a funeral, when, in fact, Jackson worked at Haynes & Haynes on the subject date.[8] Doc. 45-7 at 24 (citing doc. 45-8 at 14); *see also* doc. 45-2 at 4–5. Kenneth Haynes further asserts that he lost confidence in Jackson's integrity because she failed to inform him of a previous arrest for possession of a forged instrument. Doc. 47 at 24–25.[9]

To show pretext, Jackson cites, in part, a letter Kenneth Haynes sent to Jackson's placement agency following her discharge in which Mr. Haynes stated that "Ms. Jackson represented in her new hire documents that she had never been arrested." Doc. 54-3 at 14. *See also id.* ("I terminated Edna Jackson last Friday

[8] The text message conversation the former employer sent to Kenneth Haynes on August 21, 2014 read as follows: Katie: "Let me know when u get to the office please b/c Marylyn still has my keys"; Jackson: "Is this Katie? I'm so sorry I dropped my phone over the weekend and have lost all contacts."; Katie: "Yes"; Jackson: "I left a message at the office because that's the only number I know by heart but I am in blountsville with my daddy. His wife passed away last night and it's horrible! I mean horrible Katie. I know I can't be there today or tomorrow but Wednesday I feel like I'll be there fine. I do not have service in blountsville! It's RIDICULOUS! We had to go into town this morning just to call the office. Anyway I will let you know the arrangements once I know for sure." Katie [Wednesday]: "…ARE YOU ALIVE???"; Jackson: "Barely. Getting ready for funeral now. I may have to take emergency leave. I cannot leave my daddy. I don't know what to do."). Doc. 45-2 at 4–5. As Jackson admitted, her dad's wife was, in fact, not dead. *See also* doc. 46-1 at 19 (Q: "Had your father's wife died that week?"; A: "She did not.") & 20 (Q: "Were you telling the truth when you texted her, your father's wife had died?"; A: "No, I was not. And I also told Mr. Haynes that that is what I had told them.").

[9] Kenneth Haynes asserts that, when he confronted Jackson about the arrest, Jackson "denied that the 'Edna Elizabeth Jackson' referenced in the court documents and who shares her same birthdate, was in fact, . . . her." Doc. 38-3 at 1. However, because Jackson disputes that she lied to Kenneth Haynes about this incident, *see* doc. 54-2 at 13, and the court must construe the evidence in the light most favorable to Jackson at summary judgment, the court will not consider this proffered reason.

for misrepresenting to us that she had never been arrested.”). Jackson says this reason is false, because Kenneth Haynes later acknowledged that the employment application asked only whether Jackson had been “convicted” of a crime, *see* doc. 54-3 at 7, and that “it [was not] true that [he] terminated Edna Jackson for misrepresenting to Haynes & Haynes, P.C. that she had never been arrested,” *see* doc. 56 at 13. Jackson’s focus on the arrest ignores the rest of the letter where Kenneth Haynes identified other reasons for his decision that are consistent with his testimony in this case — i.e., the report from Jackson’s former employer that Jackson “had written a number of checks to herself that were not authorized.” Doc. 54-3 at 14. While Mr. Haynes stated in the letter to the placement agency that the allegations against Jackson were “unfounded,” he noted also that the allegations “caused some degree of concern.” *Id.* Mr. Haynes also testified that, “whether [the former employer owed Jackson money] or not, . . . that was bad judgment on [Jackson’s] part to [write the checks out of the employer’s account].” Doc. 54-3 at 6. When viewed as a whole, Kenneth Haynes’s letter sufficiently described the concerns he had about Jackson and is mostly consistent with his testimony in this case. Therefore, Jackson’s reliance on this letter to show pretext is unavailing.[10] *See Zaben v. Air Prods. & Chems.*, 129 F.3d 1453, 1458 (11th Cir.

[10] As additional evidence of pretext, Jackson states that an employee informed Jackson that Alicia Haynes would not allow Jackson to return to work “til [Jackson] c[ould] find something else,” because Jackson “ha[s] too much drama and that’s why [Jackson is] gone.”

1997) (no evidence of pretext when employer offers differing explanations for its decision that are not "necessarily inconsistent").

Ultimately, Jackson cannot show pretext due to her failure to produce any evidence showing that Kenneth Haynes did not sincerely believe that Jackson was untrustworthy in light of the reports he received, including Jackson's admission to Mr. Haynes that her text messages to "Katie" about a funeral were untrue. *See Morgan v. Orange Cnty.*, 477 F. App'x 625, 628 (11th Cir. 2012) ("[I]f the employer acted on an honestly held belief that the employee engaged in misconduct, even if it was mistaken, no retaliation exists."). *See also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("We can assume for purposes of this opinion that the complaining employees interviewed by [the decisionmaker] were lying through their teeth. The inquiry . . . is limited to whether [the decisionmaker] . . . *believed* that [plaintiff] was guilty of [of the alleged conduct], and if so, whether this belief was the reason behind [plaintiff's] discharge.") (emphasis in original). Based on this record, Jackson has failed to demonstrate that Kenneth Haynes's distrust of Jackson in light of the reports of the former employer is a "false" reason. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S.

---

Doc. 54-3 at 15. Although Jackson presumably links the statement to her overtime complaints, "too much drama" could also be a reference to the allegations against Jackson by her former employer or the lie about her dad's wife. In any event, the court does not have to reach this issue, because Jackson acknowledges that she has no evidence that Alicia Haynes played any role in Jackson's discharge. *See* doc. 49-3 at 10.

502, 515 (1993) ("[A] reason cannot be proved to be a pretext for [retaliation] unless it is shown both the reason was false, and that [retaliation] was the real reason.") (emphasis and internal quotation marks omitted). Therefore, because Jackson has failed to rebut all of defendants' proffered reasons for her discharge — in particular, Kenneth Haynes's contention that he discharged Jackson because he found her untrustworthy due to reports he believed that challenged her trustworthiness, Kenneth Haynes' and Haynes & Haynes's motion as to Count III is due to be granted. *See Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007) (Where "the employer proffers more than one legitimate, non[retaliatory] reason, the plaintiff must rebut *each* of the reasons to survive a motion for summary judgment.") (emphasis added).

2. <u>Alicia Haynes</u>

*a. FLSA Overtime Violation (Count I)*

Jackson alleges that Alicia Haynes violated the FLSA's overtime provisions by capping Jackson's paid hours at 40 per week. *See* doc. 1 at 5. To support her claim, Jackson cites a specific occasion when Ms. Haynes informed Jackson by a text message that sending a work-related email after hours "creates an overtime violation for [Ms. Haynes]." *See* doc. 49-1 at 6. Jackson undisputedly was not paid for sending the email or communicating with Ms. Haynes about it via text messages. *See* doc. 59 at 7–8 (Alicia Haynes arguing only that "the time spent

sending this e-mail is *de minimis*"). However, "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded . . . . It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946). For this reason, and because, as discussed in Part III.B.1.a, *supra*, Jackson has produced no other admissible evidence to contradict defendants' records of her work hours or that they paid her the overtime due, Alicia Haynes's motion is also due to be granted as to Count I.

*b. FLSA Recordkeeping Violation (Count II)*

Because, as discussed in Part III.B.1.b, *supra*, there is no private right of action for an FLSA recordkeeping violation, Alicia Haynes's motion is due to be granted as to Count II.

*c. Retaliation (Count III)*

Finally, because Jackson has presented no evidence that Alicia Haynes played any role in her discharge, *see* doc. 49-3 at 10 (Q: "Do you have any knowledge of any communications Kenny Haynes had with Alicia Haynes about the decision to terminate you?"; A: "I don't have any knowledge of any, no."), and because, as discussed in Part III.B.1.c, *supra*, Jackson has failed to show that each

of Kenneth Haynes's proffered reasons for discharging Jackson are false, Alicia Haynes's motion is also due to be granted as to Count III.

## IV. CONCLUSION

For the reasons stated above, the motion for sanctions, doc. 35, is due to be denied, and the motions for summary judgment, docs. 43 & 48, are due to be granted. Therefore, Jackson's remaining claims (Counts I, II, and V) are due to be dismissed. The court will enter a separate order consistent with the foregoing.

**DONE** the 26th day of July, 2017.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE